### LAMB v. LAMB.

1. COMPROMISE AND SETTLEMENT — CONTRACTS — INTENT — LANDLORD AND TENANT.

In trover by a mortgagor for one-half interest in a crop grown on defendant's farm by a tenant on shares, plaintiff may recover the value of the mortgagee's interest in the growing crop converted by defendant, notwithstanding a prior compromise agreement between the lessor and lessee in which the other joint property interests were settled and divided, but the crop was not mentioned; a clause in the agreement releasing all demands existing between the parties not being intended to affect the tenant's rights in such growing crop.

2. APPEAL AND ERROR — SAVING QUESTIONS FOR REVIEW — CHATTEL MORTGAGES.

The point that before plaintiff could proceed against defendant for the value of the crop converted he must have recourse to the other mortgaged property, will not be considered on error in the absence of any assignment thereon and of any requests to charge the jury thereupon in the trial court.

Error to Livingston; Miner, J. Submitted February 15, 1910. (Docket No. 165.) Decided April 1, 1910.

Trover by Nelson Lamb against Charles Lamb. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Clarence Tinker,* for appellant.

*J. A. Greene,* for appellee.

This is an action of trover, brought by plaintiff, to recover for a quantity of rye which he claims was unlawfully converted by defendant in the fall of 1908. Defendant had leased his farm to one Springs, who took possession thereof in March, 1906. Many controversies arose between defendant and Springs under the lease. On October 26, 1907, Springs gave to plaintiff a chattel mortgage covering certain live stock and his one-half interest in other live stock upon the farm. The mortgage also covered one-half interest in 28 acres of rye. It was given to secure the payment—

" Of any promissory note or notes, given by me to Nelson Lamb, for either past, present or future advances, or renewals of the same."

This mortgage was duly filed with the township clerk November 21, 1907, and renewed October 24, 1908. The renewal affidavit shows that at that time $150 and interest was owing. On March 12, 1908, defendant and Springs made a settlement of their differences, which was reduced to writing. Plaintiff was present when said settlement was made and was one of the witnesses to its execution. The agreement follows:

" This agreement made the 12th day of March, A. D. 1908, by and between Charles Lamb of the village of Fenton, Genesee county, Michigan, party of the first part, and Fred Springs of the township of Deerfield, Livingston county, Michigan, party of the second part, witnesseth: That whereas the said party of the second part is about to give up and leave the premises of the first party and whereas a last and final settlement of all differences existing between the parties hereto is to be made, it is hereby understood and agreed by and between the said parties as follows: That in the dividing of the hay each party is to have one-half with the understanding that said second party will sell his share of said hay to said first party at $9.00 per ton, providing said first party shall de-

sire to purchase same, and if the same is not purchased by said first party, said second party shall have the right and privilege of removing his share from the said premises any time within thirty days from this date. That in the dividing of the young cattle, the same are to be first paired, namely, two largest put together and the two next in size, etc., and out of this as they are paired off, each party shall alternately have first choice, and said first party is to have first choice of either the first or second pair as he may prefer, and the last one of said young cattle is to be purchased by the party who either gave or accepted larger amount. That in the dividing of the eight large hogs each party is to alternately have his choice of those remaining and the same process of dividing shall apply on smaller pigs, and on last remaining pig party willing to give or take the larger amount shall purchase same, and in dividing the two brood sows said second party will accept smaller one and $3.00 cash, or will take the larger and give that amount. That in dividing the chickens, each party is to alternately have his choice. All straw is to remain on the farm. That in the dividing of the sheep the said first party is to have his choice of ten of the old sheep. The wethers are to be selected by each party alternately and the young ewes are to be divided by each alternately making his choice. Said second party is to then give the said first party fourteen of said young ewes and to have the privilege of selecting the same out of those he has as above chosen. Said first party is to have his choice of bucks. Said second party is to remove all of his said property excepting hay, within two days after settlement, which settlement is to be made on Friday, March 13th, 1908, or as soon thereafter as roads, help, and weather will permit. It is also understood and agreed by the parties hereto, that when this above property has been so above divided and the said second party has paid unto the said first party the sum of sixty-five dollars and two cents ($65.02) which he is at this time owing said first party, it shall be a full satisfaction of all claims, demands, suit or any other demand whatsoever, manner or nature which either party may have or believe he has against the other arising out of farm lease or otherwise. And further, that said first party shall not further prosecute the suit he has now pending against said second party, in the circuit court in chancery in the county of Livingston, State of Michigan, other than it is agreed by

said parties hereto that said court may make this as its final decree.

"In witness whereof we have hereunto set our hands and seals the day and year first above written.

[Signed] "CHARLES LAMB.
"CLYDE LAMB.
"FRED SPRINGS.

"Signed and sealed in the presence of Nelson Lamb and P. L. Sawyer."

No mention of the 28 acres of the rye which had been sown the previous fall and was then growing on defendant's land was made in this agreement. When the rye was ready to cut the following July, Springs went to defendant's farm with a binder and attempted to cut it. Defendant prevented his doing so until next day, when Springs returned with six men and two more machines, and cut and shocked the grain. Defendant thereupon drew it into his barn and later threshed and marketed it. It is conceded that he sold one-half of it for $115.50. Numerous demands were made upon defendant by both plaintiff and Springs for one-half of the grain, which were refused. Plaintiff had judgment for $117.66 and defendant has removed the case to this court by writ of error.

BROOKE, J. (*after stating the facts*). It is claimed by defendant that a verdict should have been directed in his favor, upon the ground that plaintiff, by his conduct at and before the time the contract (March 12, 1908) was entered into, has estopped himself from setting up any title to the rye in question. This point requires consideration only, if it is determined that Springs by his contract of March 12, 1908, attempted to convey his title to his one-half interest in the grain to defendant.

It is not disputed by defendant that, either under the terms of the lease or of an oral agreement between himself and Springs, Springs owned a one-half interest therein at the time it was sown. Under familiar principles, this right of ownership would carry with it the right to harvest the grain, unless Springs parted with that right. Now,

in March, with this 28 acres of rye growing upon defendant's land, he and Springs enter into an agreement, under which Springs leaves his farm. Springs' interest in the rye was of much greater value than any other single item on the place, yet no mention is made of it in the contract, while cattle, sheep, hogs, hay, and even chickens are carefully divided and accounted for. Nor does defendant claim that in the adjustment between himself and Springs any credit was allowed to Springs on account of his interest in the grain. He does claim, however, that the general language of the contract, "it shall be a full satisfaction of all claims, demands, suit, or any other demand whatsoever, manner or nature, which either party may have or believe he has against the other arising out of farm lease or otherwise," clearly indicates that Springs intended (and he, defendant, so understood) to convey his title to the rye to defendant. We have been unable, after a careful reading of the entire record, to reach this conclusion. Defendant himself was not present when the division was made, and the contract executed by Springs. He was represented in the negotiations by his son and an attorney. It seems to us unlikely that the thing of most value which Springs possessed would have been omitted from the contract, if sale thereof had been contemplated by the parties. All those present at the time the contract was made agree that no mention whatever was made of the rye, either by defendant's agents or by Springs or plaintiff. We conclude therefrom that in the settlement of March 12, 1908, no change in Springs' title to the rye was intended to be effected. This conclusion renders it unnecessary to consider whether or not error was committed in the charge upon the question of estoppel.

In this court defendant urges that plaintiff should have had recourse to the other property covered by his mortgage before proceeding against defendant for the value of the rye.

No requests to charge upon this point were preferred, and no error assigned. The question cannot now be raised

in this court. *Stevenson* v. *Woltman*, 81 Mich. 200 (45 N. W. 825); *Roush* v. *Darmstaetter*, 113 Mich. 535 (71 N. W. 867); Cir. Ct. Rule 47 *e*. We find no prejudicial error.

Judgment affirmed.

HOOKER, MOORE, McALVAY, and STONE, JJ., concurred.